**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BETSY JO MYERS,** | : | **Civil No. 1:13-CV-2455** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **MIDLAND CREDIT** | : | |
| **MANAGEMENT, INC., and** | : | |
| **MIDLAND FUNDING, LLC,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM  OPINION

## I.   INTRODUCTION

The plaintiff in this action, Betsy Jo Myers, has sued Midland Credit Management, Inc., and Midland Funding, LLC (collectively "Midland" or "Defendants"), alleging that Midland violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA"), and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq., in connection with Midland's collection of a consumer debt.

Myers claims that Midland violated the FCRA by failing to conduct an adequate investigation into a debt that Myers claimed to dispute. In this regard, Myers appears to have demanded in various times in writing that Midland investigate her claims into an account that was appearing on her credit report, and she claims that Midland failed to conduct a reasonable investigation after receiving her demands.

(Compl. ¶¶ 12, 18-19.)  Myers also claims that she raised her concerns with credit reporting bureaus, and that after she did so Midland "verified" that account.  Myers alleges that by verifying the account without conducting a reasonable investigation into her dispute, Midland violated 15 U.S.C. § 1681s-2(b).

Plaintiff also alleges that Midland "has a duty to comply with all applicable laws governing collection procedures on Plaintiff's consumer accounts" in accordance with 15 U.S.C. §1692f, which prohibits the use of unfair or unconscionable debt collection practices.  Id. at ¶30.  Plaintiff claims that by allegedly violating §1681s(2)(b) of the FCRA, Midland also violated §1692f of the FDCPA.  Thus, Myers contends that a violation of the FCRA constitutes a *per se* violation of the FDCPA.

The Plaintiff initiated this lawsuit in the Court of Common Pleas of York County by filing a complaint on August 12, 2013.  Midland was served with the complaint on August 26, 2013, and thereafter on September 25, 2013, removed the action to this Court pursuant to 28 U.S.C. §§ 1331 and 1441 on the basis of federal subject matter jurisdiction.  On October 1, 2013, Midland filed its answer to the complaint.  On October 24, 2013, the parties submitted a joint case management plan, and on October 25, 2013, the parties consented to have a United States Magistrate Judge preside over this action.

Midland has now moved to dismiss the complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on the grounds that the complaint fails as a legal matter to state a claim. The motion has been fully briefed and is ripe for disposition. For the reasons that follow, we find that Myers has failed to state a claim for relief under the FCRA, since the allegations in the complaint do not support Myers's claim that Midland failed to conduct an appropriate investigation. To the contrary, the allegations indicate that Midland did all that it was required to do after being advised by a credit reporting bureau that Myers disputed a particular consumer debt, and in fact Midland labeled the debt as "disputed" in Myers's report.

Furthermore, because we find no legal authority to support Myers's theory that an FCRA violation constitutes a *per se* violation of the FDCPA, and because the complaint does not allege an FCRA allegation in the first place, Myers's very basis for claiming an FDCPA violation is itself deficient and Myers has not otherwise alleged facts to state a claim for a violation of the FDCPA. Accordingly, we will grant Midland's motion to dismiss the complaint without prejudice to affording Myers one final opportunity to cure the defects we have identified, and to plead sufficient facts to state a claim under either the FCRA or the FDCPA or both.

## II.   STANDARD OF REVIEW

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "[A] motion for judgment on the pleadings based on the theory that the plaintiff failed to state a claim is reviewed under the same standards that apply to a motion to dismiss" under Fed. R. Civ. P. 12(b)(6). Caprio v. Healthcare Revenue Recovery Group, LLC, 709 F.3d 142, 146-7 (3d Cir. 2013).  A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), challenges the legal sufficiency of a complaint.  In deciding a motion to dismiss, the court must accept all well-pleaded factual allegations as true, "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." McTernan v. City of York, 564 F. 3d 636, 646 (3d Cir. 2009).

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.  The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir.2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no

4

set of facts" language found in <u>Conley v. Gibson</u>, 355 U.S. 41, 45–46 (1957) ).  The

facts alleged must be sufficient to "raise a right to relief above the speculative level."

<u>Twombly</u>, 550 U.S. 544, 555.  This requirement "calls for enough fact[s] to raise a

reasonable expectation that discovery will reveal evidence" of necessary elements of

the plaintiff's cause of action.  <u>Id.</u> at 556.  Furthermore, in order to satisfy federal

pleading requirements, the plaintiff must "provide the grounds of his entitlement to

relief," which "requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do."  <u>Phillips v. County of Allegheny</u>,

515 F.3d 224, 231 (3d Cir.2008) (brackets and quotations marks omitted) (quoting

<u>Twombly</u>, 550 U.S. 544, 555).

In considering a motion to dismiss, the court generally relies on the complaint,

attached exhibits, and matters of public record.  <u>Sands v. McCormick</u>, 502 F.3d 263,

268 (3d Cir.2007).  The court may also consider "undisputedly authentic document[s]

that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims

are based on the [attached] documents."  <u>Pension Benefit Guar. Corp. v. White</u>

<u>Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir.1993).  Moreover, "documents whose

contents are alleged in the complaint and whose authenticity no party questions, but

which are not physically attached to the pleading, may be considered." <u>Pryor v. Nat'l</u>

<u>Collegiate Athletic Ass'n</u>, 288 F.3d 548, 560 (3d Cir.2002); <u>see also</u> <u>U.S. Express</u>

Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."). However, the court may not rely on other parts of the record in determining a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994).

## III.   DISCUSSION

Although it appears undisputed that Midland undertook an investigation into the Plaintiff's disputed debt with her alleged creditor, T-Mobile, following a request from Trans Union, a Credit Reporting Agency, the Plaintiff claims that Midland violated provisions of the Fair Credit Reporting Act by failing to undertake an adequate investigation into a *direct* request that she made to Midland. The Plaintiff then claims that this alleged FCRA violation constitutes a *per se* violation of the FDCPA. Plaintiff errs in this claim, however, on several scores. First, as the pleadings indicate, Midland complied with its limited obligations under the FCRA. In addition, Plaintiff errs in suggesting that an alleged violation of the FCRA constitutes a violation of the FDCPA as a matter of law. Finally, Plaintiff errs because the pleadings currently do not state a violation under either the FCRA or the FDCPA.

Congress enacted the Fair Credit Reporting Act "to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Ant. v. Burr, 551 U.S. 47, 52 (2007).  The regulatory framework of the FCRA "was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." Seamans v. Temple Univ., No. 12-4298,  – F.3d –, 2014 WL 658401, at *4 (3d Cir. Feb. 21, 2014) (quoting Cortez v. Trans Union, LLC, 617 F.3d 688, 706 (3d Cir. 2010).  Under the FCRA, consumer reporting agencies "collect consumer credit data from 'furnishers,' such as banks and other lenders, and organize that material into individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness."  Id.

Section 1681s-2(b) of the FCRA imposes specific duties upon furnishers of consumer credit information, such as Midland.  These obligations are triggered "upon notice of dispute," which for purposes of the FCRA means when a furnisher receives notice from a consumer reporting agency ("CRA") that the consumer disputes certain information.  See 15 U.S.C. §1681i(a)(2). Section 1681s-2(b) provides that, after receiving notice of dispute, the furnisher shall:

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information . . . ; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only as appropriate, based on the results of the reinvestigation promptly–

(i)   modify that item of information;
(ii)  delete that item of information; or
(iii) permanently block the reporting of that item of information.

15 U.S.C. §1681s-2(b)(1).  The statute makes clear that it is only after a CRA notifies a furnisher,  such as Midland, of a dispute is that furnisher required to conduct an investigation; review all relevant information provided by the CRA; and report the results to the CRA.  15 U.S.C. §1681s-2(b)(1)(A)-(C).  Indeed, construing this language according to its plain terms, the Third Circuit Court of Appeals has held that "[n]otice under § 1681(a)(2) *must be given by a credit reporting agency, and cannot*

*come directly from the consumer*." <u>SimmsParris v. Countrywide Fin. Corp.</u>, 652 F.3d 355, 358 (3d Cir. 2011) (emphasis added).

Here, Plaintiff's complaint itself confirms that Midland complied with §1681s-2(b).  She alleges that she disputed the account in question with "the relevant credit reporting agencies(s) (sic)", after which Midland "then verified the alleged account with such credit reporting agencies." (Compl. ¶23.)  Plaintiff attached a copy of Midland's letter to her, advising her of the results of its investigation.  (<u>Id.</u>, Ex.B-1.)  The letter explains that Midland determined the propriety of the information furnished to the CRAs, and states that it will continue to note Plaintiff's account as "disputed".  <u>Id.</u>  Plaintiff's own recognition in her complaint that Midland fulfilled its obligation under the FCRA causes us to find that her FCRA claim fails as a matter of law.

Plaintiff then erroneously suggests that Midland's failure to conduct a reasonable investigation in response to her direct *dispute* to Midland somehow gives rise to liability under §1681s-2(b).  However, as noted above, the statute does not give rise to causes of action stemming from disputes made directly to furnishers of credit information.  <u>See</u> <u>SimmsParris v. Countrywide Fin. Corp.</u>, 652 F.3d 355, 358 (3d Cir. 2011); <u>Chiang v. Verizon New England Inc.</u>, 595 F.3d 26, 35 (1st Cir. 2010); <u>Gorman v. Wolpoff & Abramson, LLP</u>, 584 F.3d 1147, 1154 (9th Cir. 2009).  Indeed,

Plaintiff's theory has been rejected by courts within the Third Circuit, which adhere to §1681s-2(b)'s plain directive that parties have private causes of action only where a furnisher fails to conduct a reasonable investigation after receiving notice of an indirect dispute (i.e., a dispute to a CRA).  See, e.g., Palouian v. FIA Card Services,, 2013 U.S. Dist. LEXIS 61861 (E.D. Pa. 2013) ("Only after the consumer notifies the consumer reporting agency, who then notifies the furnisher, can the furnisher be liable to the consumer for failing to investigate the completeness or accuracy of information"); Noel v. First Premier Bank, 2012 U.S. Dist. LEXIS 32595 (M.D. Pa. 2012) ("Only when the furnisher fails to undertake a reasonable investigation following notice [from the Consumer Reporting Agency] that it may become liable to a private litigant under §1681s-2(b)") (quoting SimmsParris, supra).

Accordingly, we find that Plaintiff cannot utilize Midland's alleged failure to conduct a reasonable investigation in response to Plaintiff's written request as a basis for her claim under §1681s-2(b).  The statute and interpreting jurisprudence clearly provide that a furnisher may be liable under this portion of the statute only when a furnisher fails to conduct an investigation in response to a dispute from a CRA. Plaintiff herself alleges that Midland investigated and verified her account upon her dispute to the CRAs, and the exhibits to her Complaint clearly demonstrate that

Midland marked her account as disputed following this investigation.  Thus, under the facts alleged, Plaintiff's claim pursuant to 15 U.S.C. §1681s-2(b) fails.

Yet, even if the Plaintiff were somehow able to state a claim regarding Midland's investigation into her alleged dispute over a debt, we would find that the pleadings fail to state a claim for a violation of either the FCRA or the FDCPA.  The Plaintiff claims that Midland's investigation into her dispute was insufficient because: (1) Midland never provided her with a copy of her contract with T-Mobile; (2) Midland's July 5, 2012 letter to the Plaintiff did not contain a description of the investigation into her dispute or any supporting documentation; (3) and because "[t]he facts indicate that Defendant(s) simply consulted their own records, which contained only abstract data, and never obtained any additional information or documentation." (Pl. Brief, Doc. 14, at 1-2.)  It appears that the Plaintiff believes that these identified shortcomings causes Midland's investigation into her dispute to be legally inadequate, and, therefore, to constitute violations of the § 1681s-2(b) of the FCRA and, by extension, the FDCPA.  We disagree.

First, to the extent Myers seeks to impose liability upon Defendants due to their failure to provide her with certain specific pieces of information – a copy of her contract with T-Mobile or other "supporting documentation" – the Fair Debt Collection Practices Act, 15 U.S.C. §1692g, does not require a furnisher like Midland

to provide such information, even if the consumer requests it.  Likewise, as outlined above, § 1681s-2(b) did not obligate Midland to supply the Plaintiff with this documentation.

Moreover, to the extent the Plaintiff is aggrieved by the extent of Midland's inquiry into the validity of her debt, we do not find that she has alleged sufficient well-pleaded facts to state a claim, and we note that the burden on a party like Midland to "verify" a debt is relatively light.  As the Fourth Circuit Court of Appeals has noted, "[v]erification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt… There is no concomitant obligation to forward copies of bills or other detailed evidence of the debt." Chaudhry v. Gallerizzo, 174 F.3d 394, 406 (4th Cir. 1999). Likewise, a debt collector is not required to conduct the type of investigation Plaintiff describes in her brief; "Verification of a debt does not obligate a debt collector to investigate whether the debt is valid." Wittenberg v. Wells Fargo Bank, N.A., 852 F. Supp.2d 731, 753 (N.D. W.Va. 2012); see also Graziano v. Harrison, 950 F.2d 107 (3d Cir. 1991) (verification informing consumer of amount of debt and original creditor were sufficient under 15 U.S.C. §1692g(b)); Yentin v. Michaels, Louis & Assoc., 2011 U.S. Dist. LEXIS 104711 (E.D. Pa. 2011) (verification of debt as

required by 1692g(b) is satisfied where a debt collector confirms, in writing, that the amount demanded is the amount claimed by the original creditor); <u>Donatelli v. Warmbrodt</u>, 2011 U.S. Dist. LEXIS 69207 at 36-37 (W.D. Pa. 2011) (following <u>Chaudhry</u> and observing that verification of debt is intended only to "eliminate the… problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.") (internal citations omitted).

Plaintiff's dispute letter to Midland requests "a copy of the contract which proves the amount of the alleged high balance which you are claiming.  If you do not have a contract, then please provide specific and detailed alternate proof of the alleged high balance." (Doc. 1-1, at 20 of 26)  Again, the FDCPA does not require that Midland comply with this request.  Instead, the statute simply requires a debt collector to confirm the amount of the debt and the identity of the creditor, and relay that information to the debtor.  <u>See</u> <u>Chaudhry</u>, 174 F.3d 406.  Plaintiff acknowledges, both in her complaint and in her opposition brief, that Defendants confirmed, in writing, the identity of the original creditor, the original account number, and the accuracy of Midland's reporting of Plaintiff's delinquent account.  (Doc. 1-1, at 21-22)

We thus find from the face of the pleadings and the exhibits attached thereto that Midland's response to Plaintiff's dispute satisfied the requirements of the FDCPA

13

– and, Plaintiff does not really contend otherwise. Instead, Plaintiff attempts to craft an FDCPA claim by contending that Midland's "woefully deficient" response to her direct dispute somehow gives rise to liability under 15 U.S.C. §1681s-2(b). Thus, she argues that "by verifying the disputed information without conducting a reasonable investigation upon receipt of Plaintiff's direct dispute, Defendant(s) violated 15 U.S.C. §1681s-2(b)." (Pl. Brief at 2.). As noted above, however, Midland had no legal duty under the FCRA to conduct any investigation based upon a direct request from the Plaintiff; instead, Midland was required to do no more than it apparently did, namely, to conduct the limited investigation required by § 1681s-2(b) upon request from a CRA. Thus, Plaintiff's effort to fashion an FDCPA claim out of an investigation that, according to the pleadings, complied entirely with the requirements of the FCRA is unsupported by any legal authority and will not be embraced by this Court.

The plaintiff candidly concedes that her FDCPA claim is based entirely upon her theory that a violation of the FCRA constitutes a *per se* violation of the FDCPA. That simply is not the case, and presumably for that reason the Plaintiff has offered no legal authority for this proposition, and we have found none. Instead, the Plaintiff refers the Court to a complaint and jury verdict from a single case in the Northern District of Alabama, Brim v Midland Credit Management, Inc., No. 10-369 (N.D.

14

Ala.), that contains no such holding. Instead, it appears that in that particular case, the plaintiff brought discrete claims against the defendant under both statutes, and the case resulted in a jury verdict in the plaintiff's favor. Nothing from that case stands for the proposition that a violation of the FCRA constitutes a *per se* violation of the FDCPA, and we have found no case law that supports the Plaintiff's legal theory.[1] Furthermore, because we find that the Plaintiff has not pleaded a violation of the FCRA in the first place, the absence of an FCRA violation entirely undermines the assertion that such a violation would also be a violation of the FDCPA.

## IV.   **CONCLUSION**

For all of the foregoing reasons, we find that the Plaintiff has failed to state a claim for relief under the FCRA or the FDCPA based upon Midland's alleged actions

---

[1] There may be some instances where violation of a parallel state law may be found to constitute a *per se* violation of the FDCPA, and indeed some courts have so held. See, e.g., Sibley v. Firstcollect, Inc., 913 F. Supp. 469, 471-72 (M.D. La. 1995); Russey v. Rankin, 911 F. Supp. 1449, 1459 (D.N.M. 1995); Kuhn v. Account Control Tech., Inc., 865 F. Supp. 1443, 1452 (D. Nev. 1994). Other courts have more cautiously held that although violations of a parallel state consumer protection law may violate the FDCPA, they typically will not be deemed *per se* violations of federal law. See, e.g., LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1190 1192 (11th Cir. 2010); Carlson v. First Revenue Assurance, 359 F.3d 1015, 1018 (8th Cir. 2004); Wade Reg'l Credit Ass'n, 87 F.3d 1098, 1099-1101 (9th Cir. 1996); Bradshaw v. Hilco Receivables, LLC, 765 F. Supp. 2d 719, 729 (D. Md. 2011) ("[T]his Court declines to hold that any violation of state law, no matter how trivial, constitutes a per se violation of the FDCPA.").

or omissions following the Plaintiff's efforts to dispute a consumer debt, and the

Defendants' motion will be granted.  In an abundance of caution, however, we will

permit the Plaintiff to file an amended complaint within 20 days if she is able to

allege facts that state a claim under either or both statutes, and that effectively address

the deficiencies identified in this memorandum.

  An order consistent with this memorandum will be entered separately.


        */s/ Martin C. Carlson*
        Martin C. Carlson
        United States Magistrate Judge

Dated: March 13, 2014